Per CuRiAM:
The contract in this case consists of the two letters, set forth in the preceding findings of August 17, 1901, and of August 28, 1901. It should be understood that the initials “ f. o. b. Manila ” in the first letter mean that the articles called for will be delivered free of freight at Manila, and that the words “ on invoice verfication at Manila ” in both letters mean that the public printing office in Manila is to have the opportunity of verifying the invoice by examining packages of goods before payment. ■
The goods in this country were to be inspected at the Insular Division in this country, where samples were to be sent. Bills for supplies were to be submitted in duplicate to the Bureau “ for verification of prices at Government Printing Office rates,” and “ bills of lading from New York to be submitted, in duplicate, to Chief of Division of Insular Affairs for verification.” The price was to be the price which the Government Printing Office' paid for similar goods “plus freight rate from New York to Manila.” The vendors were to'prepay the freight and add it to the Government Printing Office rate. The purchaser was to pay the total amount, which constituted, according to the contract, the price of the goods.
The general rule in such cases is that title passes on delivery of the goods to the carrier if nothing more remains to be done by the vendor. The claimants contend that nothing remained to be done by them; that their contract required them to submit samples for inspection to the Insular Bureau; to deliver the goods to a designated carrier, and prepay-the freight, all of which things they did. They also contend that “ invoice verification at Manila ” was not something to be done by the vendors to the goods, but something to be done concerning the invoice by the vendees, and consequently that the title passed when the goods were delivered on board the designated vessel and the freight paid; that the vendors had then no further control of the goods, and that they were then at the risk of the purchaser.
On the part of the defendants it is contended that some *60 thing remained' to be done before the defendants should accept the goods, viz, that they should be reexamined in Manila, and that by the terms of the contract the defendants could not be required to make payment until that was done.
To this the claimants reply that the goods were carried to Manila on a designated vessel, as required by the contract; that the defendants did acquire thereby all that the contract assured to them, viz, the right and opportunity to open the packages and verify the invoice; that this is not the case of goods lost at sea (where the question raised by the defendants might be involved), but is simply the case of goods delivered and transported according to the very terms of the contract, whereby the defendants acquired possession of the goods and the opportunity to verify the invoice, and where they examined the goods and sold them in their damaged condition. If the contract had been according to the usage of merchants it would have been in form that the price of the goods should be at Government Printing Office vates, with a provision, distinct from the price, that the vendors should prepay the freight and charge it to the vendees. The defendants’ officers so understood it; for with their orders to ship goods and pay freight they expressly said, “ The Philippine government will, upon invoice verification at Manila, reimburse you for the cost of this ocean shipment.”
It is a question in this case whether this contract was anything more than the embodiment of ordinary commercial usage — whether the difference in form is one of substance.
The defendants’ officers, as consignee, also treated the goods as goods belonging to the Government by subjecting them to the condemnation of boards of survey and by selling them without seeking authority for so doing from the claimants and by neglecting-to account for the proceeds thereof.
The case is not as clear as is desirable, and the members of the court are not fully agreed in regard to it; but upon all the facts considered the judgment of the' court is that the claimants recover judgment in the sum of $3,285.10.
Howry, J., did not sit in this case and took no part in its decision.